STATE of Wisconsin, Plaintiff-Respondent,

v.

Vernon June HASTE, Defendant-Appellant.

Court of Appeals

*Nos. 91-2036-CR, 91-2851-CR. Submitted on briefs August 11, 1992.—Decided March 2, 1993.*

(Also reported in 500 N.W.2d 678.)

2

4

For the defendant-appellant the cause was submitted on the briefs of *Lew A. Wasserman,* of Law Offices of *Lew A. Wasserman,* of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle,* attorney general, with *Daniel J. O'Brien,* assistant attorney general.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

SCHUDSON, J.   Vernon Haste appeals his convictions for battery to a peace officer and resisting an officer. Haste argues that he was denied his Sixth Amendment right to effective assistance of counsel at the trial and his Sixth Amendment right to counsel at the sentencing. Because we conclude that Haste did not waive counsel, but was denied counsel throughout his trial and sentencing, we conclude that Haste was denied his due process right of representation.[1] Therefore, we reverse.

---

[1] Haste also argues that his trial was unfair because of juror bias, and because he was required to appear before the jury in shackles and jail clothing. Because we resolve this appeal on the due process issue of Haste's representation, we do not reach Haste's other allegations of error. *See Gross v. Hoffman,* 227 Wis.

5

## I. Background

### A. Preliminary Proceedings

On November 29, 1989, Vernon Haste was tried before a jury on charges of battery to a peace officer and resisting an officer. As the following excerpts from the trial transcript indicate, Haste's representation became problematic as soon as the clerk called his case.

> MS. HOFFMAN: Gail Hoffman appears on behalf of the state.
>
> MS. RUFFALO: Sandy Ruffalo appearing on behalf of Vernon Haste who is in custody, Your Honor. Mr. Haste has informed me that he wishes to represent himself.
>
> THE COURT: Mr. Haste is now before the court
> . . ..
>
> . . ..
> It is my understanding that Mr. Haste and his attorney have some concerns about the manner in which this case is going to be presented to the jury. Mr. Haste, you have an attorney, Sandra Ruffalo. She is the attorney of record in this case. It appears that this is the [third] attorney that you have had.
>
> . . ..
> And you have run out of string on it as far as attorneys are concerned. What is your position right now with respect to proceeding to trial?
>
> [HASTE]: I'm gonna proceed in a pro se motion, plus I have never seen this individual before but one time. None of the attorneys I have had even considered of investigating this case nor has she even talked to me regarding this case or anything. I have

296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).

6

not—discovery papers and all the police records was taken from me in the county jail about four months ago. I have not been able to file anything to this court because I have not received those papers back, so at this time I'm gonna proceed in pro se. I'd like a date set for motions to be heard in this courtroom as soon as I receive those discovery papers . . ..

THE COURT: Mr. Haste, we are going to proceed to a jury trial today, and if you wish to have an attorney, you can have Ms. Ruffalo with you. *If you wish to appear pro se, I must go through a certain procedure with respect to allowing you to appear pro se.* It is a constitutional matter that has to be dealt with. You are 34 years of age?

[HASTE]: I am going to proceed, Your Honor. At this time I am not prepared to proceed today because I do not have all the information to proceed today that I need.

THE COURT: We are proceeding today, Mr. Haste, so be prepared to answer the questions I address to you.

[HASTE]: I'm sorry, Your Honor, I cannot proceed today unless I get all my papers. Take me back.

THE COURT: You are not going anywhere, Mr. Haste. If you think you can prolong—

[HASTE]: I'm not trying to prolong. I'm just trying to get some fairness here. That's what I'm trying to do . . ..

THE COURT: Well, Mr. Haste, you're—the burdens that bear upon [you] are really fantastic . . .. [Y]ou have had difficulty with your three attorneys . . .. Mr. Haste, we are going to proceed with this case. We are drawing a jury, and I am going to direct—

[HASTE]: I cannot proceed with this case today, and if you proceed with the case, I feel it's a violation

7

of constitutional right. I am not prepared. I don't have any papers. No one has talked to me about this case. Ms. Ruffalo have not talked to me. I haven't seen her since the last time when she come down here. We haven't even discussed this case, so how can we proceed in any manner whatsoever? How can we proceed?

THE COURT:  Because you are going to be seated either at the chair over there and participate in the trial or you can go back into the tank and remain there during the course of the trial, and at any time that you want to participate in it in an active sort of way, you will be given leave to do so providing you will comply with the requirements of decorum that the court must follow in order to present a fair trial. You can make your choice. *Ms. Ruffalo is going to stand by,* and if you need any—

[HASTE]:  I ask Miss Ruffalo to dismiss herself at this time. She is not my attorney on this case. I have never seen this woman before. I don't even know her. She don't even know me. She doesn't know anything about this case. I'm stating that I need time to go over my papers, then I'll be prepared to follow through with this.

THE COURT:  Bring the jury in.

[HASTE]: I'm sorry. I ask that she do not proceed with this.

THE COURT:  Just a minute, before he is excused.

THE BAILIFF:  Mr. Haste, the judge is talking to you.

. . ..

THE COURT: Ms. Ruffalo, do you wish . . . to make any rejoinder regarding the professional services that either you or your predecessors have performed in this case?

8

MS. RUFFALO: Your Honor, I have reviewed a very lengthy file that my predecessors have done. I have spoken to the attorneys who have represented him in the past. I have spoken to Mr. Haste. It is correct that I did not see him. I thought he was being brought down to the jail last night, and I did come over at 8 o'clock to see him and was told that he would be here this morning. This is not the type of case that required a lot of conversation with Mr. Haste. I have spoken to him I believe once or twice on the phone since I was last before this court, but—

[HASTE]: Asked you bring my legal papers to me.

MS. RUFFALO: Your Honor, he did make a request that I deliver a file which had been delivered to me by a previous attorney. I have made two attempts to do that. The Sheriff's Department will not take the file because the file contains in it things other than legal papers, and they would not go through it piece of paper by piece of paper . . ..

THE COURT: [U]nder these circumstances, we will not draw the jury until 1:30 this afternoon because if Mr. Haste wants to have further second thoughts about how he wishes to proceed, I'll give him the opportunity to do so. We are not going to act in haste with Mr. Haste. We will proceed with due deliberation insuring that he will have every right that he is entitled to under law and under constitution.

[HASTE]: I don't receive my rights because I don't have an attorney. She is not—

THE COURT: We will try the case this afternoon at 1:30. *You may make yourself available to him when he is taken back into custody. If he chooses not to talk to you, that doesn't relieve you of being here at 1:30.*

9

MS. RUFFALO: Your Honor, I will be here at 1:30. I would like permission to give to the bailiffs that portion of his file which appears to be legal papers so they can give that to him, and I'll take the other parts out.

THE COURT: Very well.

[HASTE]: And I request that this trial do not proceed today.

THE COURT: We will proceed today at 1:30.

[HASTE]: *I'm asking that it do not till I get some legal counsel here.*

(Emphasis added.)

The case was recalled that afternoon. Immediately after the clerk recalled the case and the prosecutor stated her appearance, the court proceeded.

THE COURT: The defendant is in the bullpen area, and he will be brought out shortly. Do we have a jury? Are they in the hall or? . . . You may be seated over here, Mr. Haste.

[HASTE]: I don't have an attorney. I do not—this is not my attorney. I have not talked to this woman before and I continue to state I have never seen this woman before. I have not talked to this woman before and I ask for a postponement again.

THE COURT: There will be no further postponements in this case. It will proceed. This has been pending since February of this year. This is . . . nine months later, and we will proceed. This is the third attorney that has been appointed. Mr. Haste, you have some options. If you wish to be seated in the courtroom and participate in the proceedings, which you have an absolute right to do, you may do so. *Your attorney—*

10

[HASTE]: That's not my attorney.

THE COURT: *Is Miss Sandra Ruffalo?*

[HASTE]: No, she's not.

THE COURT: *If you do not want to use her services, that is your affair.* We will proceed. In the event—

[HASTE]: *This is not my attorney.* I didn't ask for them to put her on no case at all.

THE COURT: You have repeated that five to ten times, Mr. Haste.

[HASTE]: I ask this not proceed in violation of right to due process, and if she goes head on with this, I state that I will go against you by the board or something. Someone will be getting in contact with you if you proceed illegally on these.

THE COURT: Mr. Haste, threats to your attorney or threats to anybody else—

[HASTE]: Your Honor, Mr. Landry, I am not making any threats. I am not threatening to do anything. All I'm saying *I ask you not proceed because* I just received my papers, and I feel I am going to file other motions, and *I'm looking for a different type of counsel.* I did not ask for her. I have not seen this woman since I was on that first day in court and I told her then—

THE COURT: Mr. Haste, you can either sit at the table or you can go back in the bullpen area. *A speaker will be made available so that you can hear what the proceedings are.*

[HASTE]: I would like to confront my accused, and at this time—

THE COURT: You have an opportunity to confront your accusers.

11

[HASTE]: *This is not my attorney, and I ask for a postponement . . . to seek proper counsel* and present certain motions.

THE COURT: You can file your motions and I will consider your motions. Give them to the clerk . . ..

[HASTE]: I ask a date be set to file—I have just received my papers, Your Honor. I have not had these papers in practically four, five months. These are things I was supposed to send to another attorney to look into my case. I have not even had the discovery papers, any type of police reports on this, and I asked her to bring them. She stated certain things, the reason why she couldn't bring them.

THE COURT: Mr. Haste, you have had this opportunity for the last ten months and you are deliberately stalling.

[HASTE]: I am trying to get . . . some type of justice.

THE COURT: You have a choice of either sitting at that table or going back in the bullpen.

[HASTE]: I am asking that you not proceed with this in violation of constitutional right to due process. I am telling you that right now.

THE COURT: I am the judge in this case. You are not. I ask you to take him back to the bullpen area.

[HASTE]: She is not my attorney.

THE COURT: Mr. Haste, you can come back in the courtroom at any time you wish to participate and you can sit in that chair.

[HASTE]: I ask you, Miss Ruffalo, do not proceed with this. I ask you now because you are not my attorney. I ask you to tell the judge—

THE COURT: Escort him back into the bullpen.

[HASTE]: You are fired. You are not my attorney. You are not my attorney.

THE COURT: *Miss Ruffalo, I am going to merely ask that you be seated and to be available* in the event the defendant, who has elected not to utilize your services for which you have been duly appointed and for which you are prepared to undertake on behalf of the defendant. You are the third attorney that has been appointed, and it is obvious that the lack of cooperation that has been extended by the defendant towards his attorneys is the reason why we have had this difficulty.

(Emphasis added.)

Following Haste's departure from the courtroom, the trial court made the following findings and observations: 1) Haste's courtroom conduct constituted waiver of his right to be present and to confront witnesses; 2) Haste was "screaming and hollering in the bullpen area and pounding on the walls . . . in an obvious attempt to disrupt these proceedings"; 3) Ms. Ruffalo, Haste's third court-appointed attorney, was "prepared" and "imminently [sic] qualified" to try the case for Mr. Haste; 4) Haste's assertions regarding discovery and his requests to adjourn the trial were either a "ruse," or were "tardily made," or were insufficient to justify a continuance.

Additionally, the trial court made arrangements for a maintenance man to provide "an extension cord or whatever is necessary so that Mr. Haste, who is in the bullpen area, can listen to the proceedings." The bailiffs then responded to an emergency in the bullpen, believing that Haste was "attempting to do himself bodily harm."

## B.   Jury Selection

After a short recess and before the jury panel arrived, defense counsel asked the trial court how much

she could "even participate in voir diring the jury." The trial court responded:

> THE COURT: *I am not going to require that you participate at all, but I wish to have you supervise the proceedings, and if there appears to be any compromise as to the rights of the defendant . . ., I not only ask you to feel free to interpose an objection, but I will direct you to interpose such an objection . . ..*

(Emphasis added.) The prosecutor then interjected:

> MS. HOFFMAN: Your Honor, if you would just give us a minute . . .. I called [Deputy District Attorney] Bob Donohoo, and he will be up immediately with the state's position . . . that [Haste is] not competent to fire Miss Ruffalo and that she has an obligation to conduct . . . a voir dire of the respective jurors. So he'll be up here really forthwith and the court can question him as to the basis of that opinion.

The court, however, did not delay the proceedings, and brought in the jury panel, stating:

> THE COURT: In the meantime, since this court participates actively in the voir dire examination, I am going to have the jurors come in and get the preliminary aspects . . . that are conducted by the court. Have them come in and we can get started.

The court and counsel then proceeded with the voir dire, while Haste remained in the bullpen. Questions consuming approximately forty pages of the record were completed before Deputy District Attorney Donohoo

further articulated the State's position.[2] Within that span, the court advised the jury panel as a whole and questioned some jurors individually, including one who identified himself as a House of Corrections officer who said he was familiar with Haste. Ms. Ruffalo asked no questions of this juror and only seven questions of other jurors. Additionally, when questioning the panel, the court told the panel, "We are *going to* hook up the speaker so that the defendant, who is in the bullpen area, will be able to participate in the entire trial." (Emphasis added.)

## C. Trial

Following voir dire, the twelve jurors were sworn and the court excused them briefly in order "to go on the record again about the role that Miss Ruffalo" would have on the case based upon "the presentation of law" by Deputy District Attorney Donohoo. Donohoo accurately summarized the status: "[T]he defendant has stated that he wishes to represent himself and at the same time the court has found that because of the defendant's disruptive behavior, the defendant cannot be physically present in the courtroom." After reciting relevant case law, Donohoo concluded that Haste "cannot represent himself. . . . [H]e has waived his right to self representation . . .. Miss Ruffalo is his attorney. She has to continue without the defendant cooperating."

At that point in the proceeding, the court made no further determination and gave no added direction to Ms. Ruffalo regarding whether she would represent Haste or act as standby counsel. The court did, however,

---

[2] The record reflects possible sidebar participation of Mr. Donohoo for an off-the-record discussion at one point during voir dire, prior to his participation on the record.

grant Ms. Ruffalo's request for a brief opportunity to determine whether Haste would return to the courtroom to participate in the trial. After a short break, Ms. Ruffalo advised the court:

> [H]e is not going to be coming back into the courtroom, but I did indicate to him I thought it would be in his own best interests to come in here and assist with the trial and that he could represent himself if he came in and behaved in a reasonable fashion. He had not heard the proceedings, and I tried to summarize the case law because he is aware of case law. He's indicated to me that he is not coming in here. He is lying on the floor and breathing heavily.

The trial then proceeded with Ms. Ruffalo's participation. Haste apparently was not in the courtroom with Ms. Ruffalo during the testimony of the State's two witnesses. He did, however, enter the courtroom later and make an unsworn statement proclaiming his innocence and that he was being "railroad[ed]."

### D. Sentencing

When Haste was sentenced on December 12, 1989, both the court and Ms. Ruffalo commented on the status of Haste's representation. First, Ms. Ruffalo stated her appearance by saying that she was "appearing but not on behalf of Mr. Vernon Haste who is present in Court." Next, the court characterized Ms. Ruffalo's trial representation of Haste:

> The Court *directed Ms. Ruffalo to sit in in the course of the trial and be an observer, and give to Mr. Haste, if he desired it, any information during the course of the trial that he would like to have.* He was in the bullpen and within reach of the Court. As a matter of fact, a loud speaker was connected to his cell. He was

16

advised that he could participate in the proceedings at any time he chose to do so with or without an attorney.

(Emphasis added.)

After the prosecution stated its sentencing recommendation, Ms. Ruffalo and the court commented further:

> MS. RUFFALO: Your Honor, I believe that Mr. Haste would like to see the documents. Even though I'm not his attorney, I don't think that he's had an opportunity to see that letter from Dr. Miller.
>
> THE COURT: *Ms. Ruffalo, I don't think you're in a position to speak on behalf of Mr. Haste,* but regarding the proceedings if you have any comments you wish to make about the proceedings or if Mr. Haste wishes to rely upon you for any advice or counsel during these proceedings, he should feel free to consult, discuss these matters with you.

(Emphasis added.) Then Haste addressed the court at length, recalling his trial requests for new counsel and/or an adjournment with the opportunity to represent himself. Specifically, he emphasized his displeasure that "[t]he jury was in there drawn already without my presence," and that "I also constantly screamed from . . . the bullpen that the trial stop; that I and only I wanted to pick the jury." Finally, commenting on his representation at sentencing, Haste said:

> At this time, you know, now you tell me that Mrs. Ruffalo is not she's not representing me, but throughout that whole thing, picking the jury and talking, obviously she was then; and I requested that she not do this, and now you stated she's not representing me.

17

## E.   Post-Conviction Motion

At the post-conviction motion hearing, on June 14, 1991, and August 15, 1991, with Mr. Haste being represented by new counsel, both Ms. Ruffalo and Mr. Haste offered their perceptions of the status of representation at the trial, and of Haste's ability to represent himself or participate from the bullpen.

> [Defense Counsel]:   You were directed by Judge Landry to participate in the voir dire of the jury, correct?
>
> [Ms. Ruffalo]:   I don't recall the judge using those words. I was told to be, in effect, standby counsel for Mr. Haste.
>
> . . ..
>
> [The State]:   What do you recall next after it was clear this case was going to proceed to trial? In terms of your conversation with Vernon Haste.
>
> [Ms. Ruffalo]:   We had some conversations about the fact that Mr. Haste could conduct the trial and I would sit next to him, but Mr. Haste then started behaving very wildly and was taken into the back room; and we had a delay while there was some electrician that came up and taped microphones and so on *so he could hear from the back room but not participate.*
>
> . . ..
>
> [The State]:   And just to recap a bit, what happened when you appeared in court November 29, 1989?
>
> [Ms. Ruffalo]:   Mr. Haste wanted another adjournment and he told me to ask for another adjournment so that he could get a different attorney. He was told that that had been done in the past and that it wasn't going to be redone; that he could act as his own

18

counsel but I was ordered not to withdraw from the cases but to stay in the room to help him.

[The State]:   And do you recall . . . that the Court had made a decision for you to act as stand-by counsel?

[Ms. Ruffalo]:   That's correct.

  . . ..

[The State]:   And isn't it also fair or correct to say that the trial was being piped in through a monitor which had been set up for the defendant?

[Ms. Ruffalo]:   Yes. We had to wait the start of the proceedings so that some electrical people or engineers could wire it up so that Vernon could hear everything.

(Emphasis added.) Ms. Ruffalo continued to explain that she viewed her role as that of "stand-by counsel." Further, she characterized her questioning during voir dire as "very minimal" and agreed that, possibly, Haste's behavior made him "unavailable to consult with . . . when . . . choosing the jury."

At the post-conviction motion hearing, Haste testified that he and Ms. Ruffalo never discussed the names or qualifications of the potential jurors during voir dire. He acknowledged that a speaker system "probably was piped in there" at some point, but maintained that he could not hear or distinguish what was taking place in the courtroom.

Denying Haste's post-conviction motion for a new trial, the trial court commented on five subjects of significance to the decision we reach: Haste's courtroom conduct, the voir dire, Ms. Ruffalo's representation, Haste's microphonic access to the courtroom, and the court's own effort to provide a fair trial.

Reviewing Haste's conduct, the trial court expressed its belief that:

> [T]hroughout the entire proceedings Mr. Vernon Haste attempted to create chaos . . ..
>
> [Haste] orchestrated a production that was imaginative and dramatic, intended to . . . seek every vulnerable place where the law has given . . . [him] protection and rights; and he has not only spurned them, he has insulted them and made a mockery of the entire system."

Regarding the voir dire and Ms. Ruffalo's representation, the trial court commented:

> The voir dire proceeded without the presence of the defendant . . ..
>
> . . ..
> The voir dire was obviously limited. I told the attorney . . . that she would have to proceed with the mechanics of the trial, . . . to have Ms. Ruffalo do the mechanics, which she did in a rather able manner, very restrained . . .. [S]he did not resist the Court's order for her to proceed with the voir dire.
>
> . . ..
> . . . I think that Ms. Ruffalo conducted herself in a manner that was consistent with the professional challenge that was presented to her under the circumstances.

Summarizing Haste's access to courtroom proceedings from the bullpen, the trial court said:

> An electrician was called in and a speaker was made available so that Mr. Haste, if he chose to do so, could clearly hear what was transpiring in the courtroom. On the witness stand [at the post-conviction motion hearing], Mr. Haste, rather consistently with his performance on previous occasions, said that

20

he wasn't aware that there was a speaker or if there was, he was so stressed out he couldn't hear it and it didn't make any sense . . .. I was so astonished at his testimony since I was there and ordered that he be provided with this special equipment.

Finally, reflecting on its conduct of the trial, the trial court concluded:

> [W]ithout attempting to be more self-serving and merely to protect the record, I think the Court acted in a reasonable manner.
>
> Would I to do it over again? I believe that perhaps I would make some refinements and perhaps take even greater precautions, but in the heat of the circumstance—and there was considerable heat—I believe that the defendant was afforded all the accoutrements that any judicial system anywhere could provide for him to see that he got a fair trial as the circumstances permit.

Accordingly, the trial court denied Haste's motion for a new trial.[3]

## II. The Right to Representation

The Sixth Amendment right to representation, whether by counsel or *pro se*, is an essential element of due process. *See* U.S. Const. amends. VI & XIV; Wis. Const. art. I, sec. 7; *Faretta v. California*, 422 U.S. 806 (1975); *Pickens v. State*, 96 Wis. 2d 549, 555-556, 292

---

[3] In fairness to the trial court's efforts, the record offers some basis to infer that the court had previous courtroom encounters with the defendant that had severely tested the court's patience. While that history could have been relevant to the court's relatively abrupt conclusion that Haste waived counsel, the record offers no details or information about that history.

21

N.W.2d 601, 604-605 (1980). While a defendant has the constitutional right to be represented by appointed counsel in cases carrying possible incarceration, *Gideon v. Wainwright*, 372 U.S. 335 (1963), a defendant also has the right to proceed *pro se*, *Faretta*, 422 U.S. at 812-834; *Keller v. State*, 75 Wis. 2d 502, 507-508, 249 N.W.2d 773, 776 (1977). The right to proceed *pro se*, however, is not absolute.

Before a defendant can proceed *pro se*, the trial court must determine, first, that the defendant knowingly and voluntarily waives the right to counsel and, second, that the defendant is competent to proceed *pro se*. *See Faretta*, 422 U.S. at 835; *Pickens*, 96 Wis. 2d at 568-569, 292 N.W.2d at 611 (1980). Absent unusual circumstances, most often involving a manipulative or disruptive defendant, *see State v. Woods*, 144 Wis. 2d 710, 424 N.W.2d 730 (Ct. App. 1988), waiver must be clear and unequivocal, reflecting "not only [the] deliberate choice to proceed without counsel, but also [the] awareness of the difficulties and disadvantages of self-representation, the seriousness of the charge or charges [the defendant] is facing and the general range of possible penalties that may be imposed if [the defendant] is found guilty." *Pickens*, 96 Wis. 2d at 563, 292 N.W.2d at 609; *see also Von Moltke v. Gillies*, 332 U.S. 708, 724 (1948).

Accompanying the right to representation, whether by counsel or *pro se*, is the Sixth Amendment right of confrontation that includes "the accused's right to be present in the courtroom at every stage of his trial." *Illinois v. Allen*, 397 U.S. 337, 338 (1970) (citing *Lewis v. United States*, 146 U.S. 370 (1892)). The right to be present, however, is a right that a defendant can lose:

22

> Although mindful that courts must indulge every reasonable presumption against the loss of constitutional rights, we explicitly hold today that a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom.

*Allen*, 397 U.S. at 343 (citation omitted); *see also Russ v. Israel*, 531 F. Supp. 490, 492 (E.D. Wis. 1982).

Whether Haste was denied a constitutional right raises issues of constitutional fact that we review independently. *State v. Dean*, 163 Wis. 2d 503, 511, 471 N.W.2d 310, 313-314 (Ct. App. 1991). Because the right to representation and the right to be present throughout the trial are constitutionally guaranteed and essential to due process, waiver, competency to proceed *pro se*, and continuing representation and presence throughout all critical stages of a criminal court proceeding must be scrutinized with painstaking care. As the Wisconsin Supreme Court has emphasized:

> Because of this fundamental character [of the right to counsel], it has long been held that a knowing and intelligent waiver of the right to counsel is an essential prerequisite to a defendant's proceeding alone once that right has attached. So important is the right to attorney representation in a criminal proceeding that nonwaiver is presumed and waiver must be affirmatively shown to be knowing and voluntary in order for it to be valid.

*Pickens*, 96 Wis. 2d at 555, 292 N.W.2d at 605 (citations omitted).

23

## III. Denial of Representation

### A. Failure to Determine Waiver of Right to Attorney and Competency to Proceed *Pro Se*

The record reflects Haste's effort to fire his attorney on the morning of trial and gain an adjournment in order to prepare for trial with some unnamed attorney or to proceed *pro se.* Certainly, depending on the circumstances of a case, a court can deny such requests. *See Raal v. State,* 52 Wis. 2d 144, 146-147 187 N.W.2d 800, 802-803 (1971); *Hamiel v. State,* 92 Wis. 2d 656, 667-674, 285 N.W.2d 639, 646-649 (1979). Here, given the history of Haste's representation and the long pendency of the case, as well as the apparent familiarity of the trial court with what may have been Haste's dilatory and disruptive pattern, the court may very well have acted within its proper discretion in denying an adjournment and the request for another attorney. That need not be determined, however, because even when we assume the propriety of the court's denial, we next must determine whether Haste then waived his right to representation by counsel. The record fails to contain an adequate basis to "affirmatively show" waiver of the right to counsel. *See Pickens,* 96 Wis. 2d at 555, 292 N.W.2d at 605.

Quite correctly, the trial court told Haste, "If you wish to appear pro se, I must go through a certain procedure with respect to allowing you to appear pro se. It is a constitutional matter that has to be dealt with." Nevertheless, the trial court barely began a waiver colloquy, never finished the inquiry, never posed questions to determine whether Haste would knowingly and voluntarily waive attorney representation, and never posed questions to determine whether Haste could competently represent himself.

Here, additionally, it is important to understand that even when a defendant explicitly affirms the desire to waive counsel, that does not necessarily establish the requisite competency for self-representation. In this sense, of course, the "competency" that courts must assess is *not* the competency to proceed under sec. 971.14, Stats. *See Pickens*, 96 Wis. 2d at 567, 292 N.W.2d at 610. Rather, it is the "competency" to represent oneself that, in fact, may vary according to the nature and complexity of a proceeding.

> The alertness and degree of intelligence a defendant needs to assist his lawyer are plainly less than those he would need to take on the burden of defense himself . . .. '[T]here is a point of incompetency, where a defendant is able to understand the nature of the charges against him and to assist in the preparation of his defense, yet does not have the capacity to waive counsel and undertake representation himself.'

N. Dorsen & L. Friedman, *Disorder in the Court* 122 (1973) (quoting *U.S. v. Dougherty*, 473 F.2d 1113, 1124 n.13 (D.C. Cir. 1972)).

When, therefore, the Assistant District Attorney argued that Haste was not "competent to fire [his attorney]," and when the Deputy District Attorney argued that Haste "cannot represent himself," "he has waived his right to self-representation," "his attorney . . . has to continue," they were offering a legally imprecise but largely accurate caution to the court implicitly consisting of several points: 1) Haste had not and, due to his disruptive conduct, could not provide the "affirmative showing" of waiver, required by *Pickens*; 2) Haste had not and, due to his disruptive behavior and resulting exclusion from the courtroom, could not demonstrate the

"competency" that would enable him to represent himself; 3) assuming that he was seeking to represent himself, Haste, therefore, effectively had waived his right to self-representation; 4) accordingly, Haste was required to have his attorney continue to represent him. Each point of caution was correct. Each, however, seems to have been ignored by the trial court.

Determining attorney waiver is not necessarily an easy task for a trial court. As the Wisconsin Supreme Court carefully explained, when "confronted with the unusual defendant who desires to conduct his own defense," the trial judge is dealing with a most difficult dilemma:

> On the one hand, [the judge] is required to insure that the defendant's waiver of his right to counsel is made knowingly and voluntarily, and unless the record adequately supports such a finding, any resulting conviction is subject to reversal. On the other hand, the trial judge's conclusion that the defendant does not sufficiently understand his case to make a knowing waiver, or is not competent to conduct his own defense, necessarily prevents a defendant from exercising his right of self-representation and may bring reversal on that ground. Whichever way the trial judge decides, his decision is subject to challenge.

*Pickens,* 96 Wis. 2d at 556, 292 N.W.2d at 605.[4] Here, absent any questioning of Haste by counsel or the court,

---

[4] Recently, the Washington Supreme Court provided equally empathic and emphatic language to capture the trial court's dilemma:

> We observe a tension between a defendant's autonomous right to choose to proceed without counsel and a defendant's right to adequate representation. To protect defendants from making capricious waivers of counsel, and to protect trial courts from manipulative

the record fails to demonstrate either determination: 1) that the waiver was "made knowingly and voluntarily," and 2) that Haste was "competent to conduct his own defense." *See id.*, 96 Wis. 2d at 568-569, 292 N.W.2d at 611.

The trial court's failure to explicitly determine whether Haste waived counsel and was competent to proceed *pro se* carries us close to our conclusion. It still leaves the question, however, of whether, implicitly, waiver could be established from the circumstances of the case and the conduct and statements of Haste. After all, a specific colloquy may not always be required "covering each factor specified in *Von Moltke*," *Pickens*, 96 Wis. 2d at 562-564, 292 N.W.2d at 608-609. However, the supreme court warned against inferential determinations: "So important is the right to attorney representation in a criminal proceeding that *nonwaiver is presumed and waiver must be affirmatively shown to be knowing and voluntary in order for it to be valid.*" *Id.*,

vacillations by defendants regarding representation, we require a defendant's request to proceed . . . pro se, to be unequivocal. Once an unequivocal waiver of counsel has been made, the defendant may not later demand the assistance of counsel as a matter of right since reappointment is wholly within the discretion of the trial court . . ..

The requirement that a request to proceed pro se be stated unequivocally derives from the fact that there is a conflict between a defendant's rights to counsel and to self-representation. Because of this conflict, a defendant's request for self-representation can be a "heads I win, tails you lose" proposition for a trial court. If the court too readily accedes to the request, an appellate court may reverse, finding an ineffective waiver of the right to counsel. But if the trial court rejects the request, it runs the risk of depriving the defendant of his right to self-representation. To limit baseless challenges on appeal, courts have required that a defendant's request to proceed pro se be stated unequivocally.

*State v. DeWeese*, 816 P.2d 1, 4-5 (Wash. 1991) (citations omitted).

96 Wis. 2d at 555, 292 N.W.2d at 605 (emphasis added). Because of the ambiguity of Haste's request to proceed *pro se* along with his repeated requests for other counsel, Haste's waiver of counsel was not affirmatively demonstrated, explicitly or implicitly.

## B.   Failure to Provide Representation by Counsel

Because Haste did not waive his right to counsel, and because the court did not determine that Haste demonstrated the competency required to represent himself, *see Pickens*, 96 Wis. 2d at 568-569, 292 N.W.2d at 611, the trial court had no choice but to order Ms. Ruffalo to continue full representation. Instead, the court provided a variety of directives and mixed messages that, understandably, led to counsel's confusion about her role, and resulted in either no representation or some level substantially below full representation.

At various times the court instructed counsel that she be "standby counsel" and "be available" to Haste. While such instructions may serve to guide an attorney *supplementing* a *pro se* defendant, they clearly do not elevate an attorney's partial participation to full representation. Availability on a "standby" basis does not constitute representation for a defendant who has not waived counsel, who is not competent to proceed *pro se*, and who has been removed from the courtroom.[5]

---

[5] We hasten to add, however, that nothing in this decision precludes the possibility that, on remand, waiver and competency could be established. Further, nothing in this decision precludes the additional possibility that, even absent an explicit waiver, the trial court could conclude that Haste, "by his own actions," has demonstrated competency and has made "the deliberate choice to proceed *pro se.*" *See State v. Woods*, 144 Wis. 2d 710, 715-716, 424 N.W.2d 730, 732 (Ct. App. 1988). Should such a conclusion be reached, however, and should Haste again be excluded from the

Further, at certain critical stages, the trial court instructed counsel in ways that logically would have led her to doubt even the propriety of limited representation on a "standby" status. Answering counsel's question about her role in jury voir dire, the court directed her to participate in some specific ways but also instructed, "I am not going to require that you participate at all."

Although certainly not the only directive from the court to counsel, that theme of unrequired participation squared with the court's own characterization of its

courtroom, the trial court would have to take measures beyond those utilized in the first trial. Although it expressed a desire to provide Haste with electronic access to the courtroom, the trial court did not accomplish that until after a substantial portion of voir dire had been completed without Haste's presence. Moreover, because the microphones allowed Haste to "hear from the back room but not participate," the electronic method fell short of what minimally would be required to provide a defendant self-representation. *See State v. DeWeese*, 816 P.2d 1 (Wash. 1991) (where a disruptive defendant removed from the courtroom was allowed to follow the proceedings with a video monitor and given the opportunity to return to the courtroom to conduct cross-examination). Further, when the trial court ordered that Haste be removed from the courtroom, it did not order his attorney to resume full representation. Given his exclusion from, and limited electronic access to the courtroom, resumption of representation by counsel would have been required. *See* American Bar Association Standards for Criminal Justice, sec. 6-3.9 (1986) ("Misconduct of pro se defendant" "If a defendant who is permitted to proceed without the assistance of counsel engages in conduct which is so disruptive that the trial cannot proceed in an orderly manner, the court should, after appropriate warnings, revoke the permission and require representation by counsel."). *See also Mayberry v. Pennsylvania*, 400 U.S. 455, 468 (1971) (Burger, C.J., concurring) ("The value of the precaution of having independent counsel, even if unwanted, is underscored by situations where the accused is removed from the courtroom . . ..").

overall advice when, at sentencing, the trial court commented that it had directed counsel to sit in on the trial and be "an observer." Finally, at sentencing, where Haste would have had the right to attorney representation even if he had waived counsel at the trial, the court told Ms. Ruffalo, "I don't think you're in a position to speak on behalf of Mr. Haste."

Thus, explicitly at jury selection and at sentencing, two critical stages of the proceedings, *see State v. Strickland*, 27 Wis. 2d 623, 635, 135 N.W.2d 295, 302 (1965) (accused entitled to counsel at all "critical stages"), and implicitly throughout the trial, the court instructed counsel in a manner that militated against full representation. Not surprisingly, then, counsel participated in jury selection, trial, and sentencing in a perfunctory manner, standing by as an observer for the most part, not providing the representation that was Haste's right.

While it might be argued that Haste's partial participation in combination with counsel's presence and intermittent participation provided some representation, that was not enough. The issue is not whether a defendant was completely unrepresented, but whether a defendant was completely represented. Ambiguity, confusion or misdirection must not mute Gideon's trumpet.[6]

## IV. Conclusion

We understand that "trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case" and that "[n]o one formula for

---

[6] *See Gideon v. Wainwright*, 372 U.S. 335 (1963); Anthony Lewis, *Gideon's Trumpet* (1964).

maintaining the appropriate courtroom atmosphere will be best in all situations." *Allen*, 397 U.S. at 343. Therefore, we cannot prescribe the precise solution for a never-ending variety of defendants and disruptions that plague our "palladiums of liberty." *Allen*, 397 U.S. at 346. We believe, however, that skillful trial courts can consider numerous options to assure courtroom control *and* guarantee a defendant's Sixth Amendment rights.[7]

We also understand that, in an extreme case, a clever and disruptive defendant may attempt to thwart a

---

[7] In addition to the *Allen* options of binding and gagging a disruptive defendant, citing him or her for contempt, or removing a defendant from the courtroom, *see* 397 U.S. at 343-344, a trial court may: 1) deny a defendant's demand for a new lawyer, *see Wheat v. United States*, 486 U.S. 153, 159 n.3 (1988); 2) require stand-by counsel to assume full representation, contrary to the desire of the defendant, *see Mayberry v. Pennyslvania*, 400 U.S. 455, 468 (1971) (Burger, C.J., concurring); 3) accept waiver of counsel and allow self-representation with or without "standby" counsel, *see State v. Lehman*, 137 Wis. 2d 65, 77-78, 403 N.W.2d 438, 444-445 (1987) (decision whether or not to appoint stand-by counsel for a *pro se* defendant rests within a trial court's discretion); 4) accept waiver of counsel and allow self-representation, with standby counsel, but later remove defendant from the courtroom and order counsel to provide full representation, *see Mayberry*, 400 U.S. at 468; and, 5) even require self-representation of a defendant whose own actions clearly constitute a waiver of counsel despite an express unwillingness to waive, *see Woods*, 144 Wis. 2d at 714-716, 424 N.W.2d at 731-732.

For important limitations on "hybrid representation" or "co-counsel" arrangements between defendants and lawyers, see *Moore v. State*, 83 Wis. 2d 285, 297-302, 265 N.W.2d 540, 544-547 (1978), *cert. denied*, 439 U.S. 956, (a defendant represented by counsel must not act as "co- counsel"), and *McKaskle v. Wiggins*, 465 U.S. 168, 178 (1984) (stand-by counsel's participation must not impinge on a *pro se* defendant's right to preserve actual control of case).

trial court's effort to ascertain the status of representation. *See Woods*, 144 Wis. 2d at 714-716, 424 N.W.2d 731-732. However, while a defendant has the right to counsel and the right to self-representation, a defendant does not have any right to make a trial court guess what the choice may be. Confronted with such circumstances, a trial court will be challenged to muster patience, perseverance, and decisiveness to clearly determine the specific nature of a defendant's representation. Absent a clear waiver of counsel and absent a clear demonstration of a defendant's ability to proceed *pro se*, courts are well advised to mandate full representation by counsel.

Vernon Haste never waived his right to counsel and never demonstrated the competency to represent himself. Despite that, he was not represented by counsel. Accordingly, we conclude that Haste was denied his constitutional right of representation. His conviction is reversed and the case is remanded for a new trial.

*By the Court.*—Judgment and order reversed and cause remanded with directions.