STATE of Wisconsin, Plaintiff-Respondent,

v.

James Michael HAYNES, Defendant-Appellant.

Court of Appeals

No. 83–736–CR. *Submitted on briefs December 14, 1983.—Decided February 1, 1984.*
(Also reported in 345 N.W.2d 892.)

22

For the defendant-appellant the cause was submitted on the briefs of *Donald T. Lang,* assistant state public defender, of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, with *Thomas J. Balistreri,* assistant attorney general, of counsel, of Madison.

Before Wedemeyer, P.J., Decker and Moser, JJ.

DECKER, J.   James Haynes appeals from a judgment of conviction of two counts of robbery and from an order denying his motion for a new trial.  He contends that he was denied his constitutional and statutory rights to be present in court during his trial, that he was denied his rights to effective assistance of counsel and to act as his own attorney, that he was denied his right to due process in the admission of identification testimony by one of the witnesses, and that he was denied his right to present a defense for failure to comply with the notice of alibi statute, sec. 971.23 (8), Stats.

We conclude that the trial court erred in failing to obtain a knowing waiver of Haynes' right to be present at his trial and failed to exercise its discretion in summarily rejecting Haynes' request for a new attorney.  We are, however, unpersuaded by Haynes' notice of alibi argument.  Accordingly, we reverse both counts of the conviction and remand for a new trial.  We are further persuaded that the out-of-court photographic identification procedure implemented concerning count one was impermissibly suggestive and that the state failed to meet its burden of demonstrating the reliability of that identification by the totality of the circumstances.  We therefore direct that, upon remand, the trial court regard the out-of-court photographic identification as inadmissible evidence.

On the morning of April 7, 1982, Frances Eddy was waiting for an elevator in a parking structure when she noticed a man near her.  He struck her in the head, and she dropped her purse and ran away.  She saw him pick up her purse and leave.  She described her assailant as a tall, black male of medium build wearing glasses.  On April 18, the police showed her photographs of five black males, one of which was of Haynes.  None of the men

was wearing glasses. Eddy was unable to identify any of them as her assailant. She was then presented with a photograph of Haynes wearing glasses; she immediately identified him.

On April 17, Karen Smith entered an elevator in a parking structure, where she was struck in the head by a man who entered with her. He fled with her purse, but was apprehended by a security guard ten minutes later. She identified the man as Haynes.

On the day of trial, just prior to the commencement of jury selection, Haynes requested a new attorney, which request was denied, as was Haynes' counsel's request to withdraw. Following a brief recess during which Haynes was in the "bullpen," the bailiff advised the court that Haynes did not wish to participate in his trial and wanted to talk to his lawyer. The court allowed the conference. Haynes' counsel reported back that Haynes refused to participate. The trial court then proceeded with the trial, but explained Haynes' absence to the jury.

During the trial, a *Wade-Gilbert* hearing was held at which Eddy was questioned concerning her photographic identification of Haynes. The trial court concluded that the presentation of the photographs was not impermissibly suggestive and that there was no likelihood of misidentification under the totality of the circumstances.

At this time, the trial court also refused Haynes' counsel's request for an alibi instruction for failure to comply with the notice of alibi statute, sec. 971.23(8), Stats.

The jury ultimately found Haynes guilty of both counts of robbery. Haynes' motion for a new trial was denied. This appeal ensued.

We first address Haynes' contention that he was denied his constitutional and statutory rights to be present in court. The situation before us appears to be one of first impression in Wisconsin.

There can be little question that an accused has a right under the confrontation clause and the fourteenth amendment to be present in the courtroom at every stage of his trial. *Illinois v. Allen,* 397 U.S. 337, 338; *reh. denied,* 398 U.S. 915 (1970). This right may be lost by consent or misconduct. *Id.* at 342–43 [citation omitted]. While Haynes' briefs on appeal do not suggest that his absence from his trial was the result of anyone's insistence but his own, they do argue error in the trial court's failure to apprise Haynes of his constitutional right to be present, to waive that right, and to reclaim it at any time. We are persuaded that Haynes did not knowingly waive his right to be present at trial because the record is barren of any indication that he was ever apprised of that right.

The oft-cited definition of "waiver" was first set forth in *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938): "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." While Haynes' actions here can fairly be characterized as "intentional," there is nothing in the record which provides any assurance that the right was "known." We will not indulge in the state's presumption that a defendant "who attends the opening session of his trial surely must know that he has a right to be present . . . ." Courts indulge in every reasonable presumption against waiver of fundamental constitutional rights. *Id.* We here consider it reasonable to presume that Haynes did not knowingly waive a right he was never informed of.

The state argues from *Taylor v. United States,* 414 U.S. 17 (1973), which held that a defendant who jumped bail in mid-trial was presumed to have known that he had a right to be present and that the trial would continue in his absence. Two things distinguish that case from the case here. First, Taylor's trial had already be-

gun when he absented himself; Haynes' had not. Taylor's attendance at the opening session of his trial was one of the factors used by the Supreme Court in finding a knowing waiver. *Id.* at 20. Second, there is simply no way to apprise a bail-jumping defendant of his right to be present without postponing the trial indefinitely. As the *Taylor* court pointed out, "there can be no doubt whatever that the governmental prerogative to proceed with a trial may not be defeated by conduct of the accused that prevents the trial from going forward." *Id., quoting Illinois v. Allen,* 397 U.S. at 349 (Brennan, J., concurring). Here, any delay or other detriment to judicial economy caused by Haynes' own conduct, *i.e.*, his unwillingness to participate, would have been slight indeed. The trial would not have to be postponed indefinitely; any postponement would have been only for the few minutes it presumably would have taken for the trial court to apprise Haynes of his right to be present.

We further note that there is nothing in the briefs or the record to indicate that Haynes had any indication that he could revoke his relinquishment of his right to be present. While we need not and do not hold this to be coequal with the right to be present, we do point out that the United States Supreme Court has at least suggested that, "[o]nce lost [because of disruptive conduct], the right to be present can, of course, be reclaimed" as soon as a defendant is willing to properly conduct himself. *Allen, supra* at 343.

Haynes urges this court to adopt the standards for notice of the right to be present as set forth in *Cross v. United States,* 325 F2d 629, 631 (D.C. Cir. 1963) : "where the defendant is available, 'the serious and weighty responsibility' of determining whether he wants to waive a constitutional right requires that he be brought before the court, advised of that right, and then permitted to make 'an intelligent and competent waiver.' " [Citations

omitted.] While we agree that this would be the optimum practice, we believe that the instances of waivers of the right to be present at trial are bound to be extraordinary and difficult to handle. As a result, we believe they should be handled on a case-by-case basis, much like the waivers anticipated in *Zerbst, supra* at 464.

Nonetheless, we conclude that there exists a reasonable presumption against knowing waiver here because of the trial court's failure to apprise Haynes of his right to be present. We therefore reverse the judgment of conviction.[1]

We further determine there to have been error in the trial court's summary refusal of Haynes' request for new counsel. The question of whether an appointed counsel should be relieved and another attorney substituted in his place is one which lies within the province of the trial court's discretion. *State v. Scarbrough,* 55 Wis. 2d 181, 186, 197 N.W.2d 790, 793 (1972). The state aptly points out that good cause is required to warrant substitution of appointed counsel. *See State v. Johnson,* 50 Wis. 2d 280, 285 n. 4, 184 N.W.2d 107, 110 n. 4 (1971). Here, however, there was no inquiry into Haynes' reasons for wanting a different attorney; Haynes' request was denied as soon as it was made.[2]

[1] Because of this holding, we need not address Haynes' correlative argument that the dictates of sec. 971.04(3), Stats., were not complied with.

[2] The colloquy between the trial court and Haynes reads as follows:

THE COURT: Well, if noise and facility are desirable, I suppose then the Court would listen to statements all the time, but we have a function here and that is to draw a jury and try a jury case and everybody's ready. The taxpayers—

THE DEFENDANT: I'm not ready. Your Honor, I'd like to make a statement.

■

While we recognize that eleventh-hour requests for change of counsel are properly frowned upon generally, we know of no authority which entirely obviates the "good cause" rule in those circumstances. Discretion is not synonymous with decision making; it contemplates a process of reasoning. *McCleary v. State,* 49 Wis. 2d 263, 277, 182 N.W.2d 512, 519 (1971). Here, at the time the decision was made, there were no facts available to the trial court upon which to reason.[3]

We are unpersuaded, however, by Haynes' argument that he was denied his right to present a defense when the trial court excluded his alibi witnesses for failure to comply with the notice of alibi rule, sec. 971.23 (8), Stats. Here, trial counsel did not advise the trial court of the possible alibi witnesses until mid-trial.

■

Where error is claimed as a result of the exclusion of evidence, an offer of proof must be made in the trial court as a condition precedent to the review of any alleged error. *McClelland v. State,* 84 Wis. 2d 145, 153, 267 N.W.2d 843, 847 (1978). An offer of proof need not be stated with complete precision or in unnecessary detail, but it should state an evidentiary hypothesis underpinned by a sufficient statement of facts to warrant the conclusion or inference that the trier of fact is urged

THE COURT: We'll draw a jury first. Bring the jury down.

THE DEFENDANT: Your Honor, I would like to make a request for a new attorney. I feel—

THE COURT: We'll draw a jury.

THE DEFENDANT: I would like to make a request for a new attorney—that a new attorney be granted me.

THE COURT: All right. That request is noted on the record, and the request is denied. Is the jury enroute?

[3] Because of this determination, we do not address Haynes' correlative argument that he should have been informed by the trial court of his right to proceed *pro se.*

to adopt. *Milenkovic v. State*, 86 Wis. 2d 272, 284, 272 N.W.2d 320, 326 (Ct. App. 1978).

The proffered offer of proof here does not meet the above standard. Trial counsel could discuss the testimony of only one of the three prospective witnesses. While his offer of proof was presented in a narrative form, he acknowledged that he could only speculate on what she might testify to; ultimately, he did not know.[4] There were no underlying facts here, only speculation. There is no way for the trial court or this court to determine whether this was anything other than an "enthusiastic advocate's overstated assumption." *See id.*

We conclude, therefore, that this issue was not properly preserved in the trial court, and we deem it waived.

Although we reverse and remand for a new trial, we must also determine Haynes' additional argument concerning the admissibility of victim Eddy's out-of-court

---

[4] The offer of proof and subsequent colloquy read in pertinent part:

MR. PUMP: I've been apprised, Your Honor, that there may be a witness who will testify that on April 7th, at the time in question, she was with the defendant at her apartment, and that she was with the defendant on that day as well as other days up to and including April 17th, and that he did not go away any mornings during those days.

. . . .

THE COURT: Well, from your statement, counsel, you still don't know what she's going to testify to. Your statement was that she may testify.

MR. PUMP: That's correct.

THE COURT: And, of course, to bring up—That's precisely the type of situation that that statute was intended to prevent. That is a last moment conversation either to truth or something less than that of a witness who would come in, gives the Court, the jury, and the prosecution as well as the defense no opportunity to really search for truth but to merely fishtail along in a miasma of partial information.

photographic identification, in anticipation of the new trial.

The test for determining whether an out-of-court photographic identification is admissible or, on review, whether the out-of-court identification was properly admitted has two facets. First, the court must determine whether the identification procedure was impermissibly suggestive. Second, it must decide whether under the totality of the circumstances the out-of-court identification was reliable, despite the suggestiveness of the procedures. *Powell v. State,* 86 Wis. 2d 51, 65, 271 N.W.2d 610, 617 (1978).

Concerning the first facet of the analysis, the state concedes that the procedure was characterized by unnecessary suggestiveness. We agree. Suggestiveness in photographic arrays may arise in several ways—the manner in which the photos are presented or displayed, the words or actions of the law enforcement official overseeing the viewing, or some aspect of the photographs themselves. *State v. Mosley,* 102 Wis. 2d 636, 652, 307 N.W.2d 200, 210 (1981). Here, the first and third considerations combine to create the problem.

Eddy was shown photographs of five black males, all tall and with facial hair but none wearing glasses. She could not pick Haynes out of this array. She was then shown only a photograph of Haynes. In this photo, he wore glasses, a fact more closely in keeping with Eddy's description of her assailant. Eddy was now able to identify him immediately.

A photographic procedure which includes a photo which is unique in a manner directly related to an important identification factor may be held impermissibly suggestive. *Id.* at 654, 307 N.W.2d at 210–11. Unlike the situation in *Mosley,* where the victims were shown a group of photographs of which only one was of a man

with a tattoo, an important identifying characteristic, *id*. at 640, 307 N.W.2d at 204, here the problem is compounded by the fact that the photo containing an important characteristic was shown to Eddy all by itself and after she had failed to identify Haynes in a photograph without it. We conclude (and the state concedes) that the photographic identification procedure was impermissibly suggestive.

Having done so, we now must turn to the totality of the circumstances to determine reliability. Once the identification procedure has been shown to be impermissibly suggestive, the state then has the burden of showing reliability through the totality of the circumstances. *See Powell, supra* at 66, 271 N.W.2d at 617. The factors to be considered under this part of the analysis are:

"the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." [Citation and footnote omitted.]

*Id*. at 65, 271 N.W.2d at 617.

The trial court here gratuitously determined that the totality of the circumstances resulted in no likelihood of misidentification, although it also had determined that the identification procedure was not impermissibly suggestive. In any event, the record does not demonstrate that the trial court applied the *Powell* factors in making the totality determination. Our application of the facts to this standard[5] persuades us that the state did not meet

---

[5] *State v. Mosley*, 102 Wis. 2d 636, 654–55, 307 N.W.2d 200, 211 (1981), apparently permits the *Powell* factors to be applied by an appellate court.

its burden in demonstrating the reliability of the identification.

Eddy testified that she had the opportunity to view her assailant's face for approximately a minute and a half from distances ranging from three to six feet. She did not specify for how long a period she actually saw her assailant's face, but only that she had the opportunity to see it before she was struck. After she was struck, she fled and saw, from a distance of approximately thirty feet, her assailant pick up her purse. Her degree of attention was not clearly established.

Eddy described her assailant as "quite tall, about six two," wearing glasses, of medium build, and black. She also identified him wearing an orange stocking cap and a dark, lightweight jacket—either black or blue. Haynes matches the bodily description except that he is six feet, six inches tall. The clothing description is ultimately irrelevant because of the passage of days between the assault and the arrest.

As has been suggested by the facts, Eddy's level of certainty at the photo identification is less than maximum. She was unable to identify Haynes from the first group of pictures of men without glasses. She did, however, identify him immediately upon being shown a picture of Haynes wearing glasses. Finally, there elapsed a significant period of time between the offense and the confrontation—eleven days.

Considering all the appropriate factors, we are unable to conclude that the state met its burden in demonstrating the reliability of the photographic identification from the totality of the circumstances.[6]

---

[6] We reject the state's argument that "[t]he similarities between the two crimes are so striking as to leave no doubt that both were committed by the same person." We are simply unpersuaded that any factor or combination of factors constituting similarities between the two offenses is so striking or extraordi-

Accordingly, upon remand for a new trial on both counts, we direct the trial court to exclude Eddy's out-of-court photographic identification as inadmissible and to apply, if necessary, the test put forth in *Powell, supra* at 65–66, 271 N.W.2d at 617, to determine the validity of any in-court identification.

*By the Court.*—Judgment and order reversed and cause remanded with directions.

nary to result in a determination of harmless error as a matter of law.