STATE of Wisconsin, Plaintiff-Respondent,

v.

Ismet D. DIVANOVIC, Defendant-Appellant.†

Court of Appeals

*No. 95–0881–CR. Submitted on briefs December 15, 1995.—Decided February 14, 1996.*

(Also reported in 546 N.W.2d 501.)

†Petition to review denied.

On behalf of the defendant-appellant the cause was submitted on the briefs of *William J. Chandek* of *William J. Chandek & Associates* of Brookfield.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney

general, and *Thomas J. Balistreri*, assistant attorney general.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

NETTESHEIM, J.   Ismet D. Divanovic appeals from a judgment of conviction for solicitation to commit a felony pursuant to § 939.30(1), STATS., and party to the crime of misdemeanor criminal damage to property pursuant to §§ 939.05 and 943.01(1), STATS. Divanovic was sentenced as a repeater pursuant to § 939.62, STATS., on both counts. Divanovic also appeals from an order denying postconviction relief.

On appeal, Divanovic contends that: (1) he was denied his constitutional right to be present at all critical stages of the trial court proceedings, (2) he was denied his right to effective assistance of counsel because his trial counsel did not actively participate in the trial court proceedings, and (3) the repeater portion of the sentence on the conspiracy conviction is invalid. We reject all of Divanovic's arguments. We affirm the judgment of conviction and the postconviction order.

BACKGROUND

We set out the history of this case at some length. During the pendency of all the trial court proceedings in this case, Divanovic was serving a state prison sentence on an unrelated conviction. On December 14, 1993, the State charged Divanovic in this case with soliciting a felony escape from the Kenosha county jail and party to the crime of intentionally causing criminal damage to property. That same day, Court Commissioner Frank J. Parise conducted an initial appearance. However, Divanovic refused to come out of his jail cell to attend the proceeding. Commissioner

Parise set cash bail at $10,000 and adjourned the initial appearance to December 16.

At the adjourned initial appearance, Divanovic again refused to leave the jail and to appear in court. Commissioner Parise again adjourned the initial appearance and arranged for the appointment of counsel for Divanovic.[1] At the adjourned hearing on December 23, Attorney Robert Bramscher appeared for Divanovic, but Divanovic again refused to appear. At this hearing, Bramscher reported the following to Commissioner Parise:

> [Divanovic] indicated specifically [that] he did not reject my representation, but he did not want me to make an appearance for him today; and he was not going to make an appearance today. Therefore, as a matter of courtesy, I am informing the Court of that; but I am bound by his instructions not to make an appearance despite the fact I'm technically representing him.

Commissioner Parise then informed Bramscher of Divanovic's history of not appearing in court and refusing to come out of the jail,[2] and stated that the court nonetheless wanted Bramscher to attend and participate in the trial proceedings despite Divanovic's nonappearance. Commissioner Parise scheduled a preliminary hearing for January 7, 1994.

When the matter was called for preliminary hearing, Divanovic again refused to attend the proceedings. Bramscher informed Commissioner Parise that he had been instructed by Divanovic not to appear at the hear-

---

[1] The appointment of counsel for Divanovic was by court appointment, not public defender appointment.

[2] The record is unclear whether Commissioner Parise was referring only to the instant case or other prior cases.

ing. According to Bramscher, Divanovic said that he had been assaulted the previous night and was "unable to make an appearance." Commissioner Parise proceeded with the hearing after he determined that Divanovic had waived his right to appear. Because Divanovic had instructed Bramscher to not even appear at the hearing, Bramscher did not actively participate in the proceeding. At the conclusion of the hearing, Commissioner Parise found probable cause and bound Divanovic over for trial.

The case was then assigned to the Honorable Michael S. Fisher, who conducted the arraignment on February 4, 1994. Bramscher appeared, but Divanovic again refused to attend. Judge Fisher inquired whether the bailiff had any information about Divanovic's nonappearance. The bailiff reported that Divanovic was in the jail, that he had told the bailiff that he had fired Bramscher and that he refused to appear at the arraignment. Based on this information, Judge Fisher released Bramscher from representing Divanovic and entered "not guilty" pleas on Divanovic's behalf. Judge Fisher then scheduled the matter for a jury trial.

On April 25 and 27, 1994, Divanovic wrote to Judge Fisher acknowledging the jury trial date and asking Judge Fisher to appoint counsel for him. By letters to Divanovic, Judge Fisher denied these requests. In addition, Judge Fisher warned Divanovic that if he continued to refuse to attend the proceedings, the trial would be conducted in his absence.

On May 25, 1994, Judge Fisher conducted a pretrial proceeding to again address the question of legal representation for Divanovic. Bramscher appeared, but again Divanovic refused to appear. At this proceed-

ing, Judge Fisher reappointed Bramscher as Divanovic's counsel.

The case was called for jury trial on June 30, 1994. Bramscher appeared. Again, Divanovic refused to appear. Prior to jury selection, Bramscher reported that since his reappointment, he had discussed possible trial tactics with Divanovic, including the possible subpoenaing of certain witnesses. However, on that morning, Divanovic had instructed Bramscher to request Judge Fisher to adjourn the trial. If Judge Fisher denied the request, Divanovic further instructed Bramscher not to participate in the proceedings even if Judge Fisher ordered Bramscher to personally remain in attendance at the trial.

Bramscher also informed Judge Fisher that he had explained to Divanovic that if he followed Divanovic's instructions, Bramscher would not be able to cross-examine any witnesses or call any witnesses on Divanovic's behalf. Divanovic stated to Bramscher that he understood these consequences. Nonetheless, Divanovic stood by his instructions to Bramscher because participating in the trial would "add legitimacy to the proceedings."

Pursuant to Divanovic's instructions, Bramscher then requested an adjournment, which Judge Fisher denied. Judge Fisher then inquired of a "Mr. Kamin" as to his knowledge of Divanovic's intentions. Kamin reported that he had spoken to Divanovic that morning and that Divanovic had advised that he would not come out of the jail to attend the trial or to don the clothing which Bramscher had brought for him to wear at the trial.[3]

---

[3] The record does not indicate who "Mr. Kamin" is or his role in these proceedings. Regardless, Divanovic does not dispute

Judge Fisher then summarized the history of the case regarding Divanovic's lack of cooperation and his repeated refusals to appear. Based on this history, Judge Fisher confirmed his earlier ruling denying Bramscher's request for an adjournment of the trial. In the course of these remarks, Judge Fisher also recounted an unreported personal visit he previously made to Divanovic in the county jail in an effort to persuade Divanovic to attend the trial. Judge Fisher then instructed Bramscher to remain in attendance at the trial, but added that "[Bramscher] does not have to participate in any way at his client's request."

The State then asked Judge Fisher to send the bailiff over to the jail to ask Divanovic one more time to attend the trial and to warn him again that the trial would commence and continue without him if he declined to attend. Judge Fisher adopted this suggestion and the bailiff was dispatched to the jail. Moments later, Judge Fisher reported the results of the bailiff's meeting with Divanovic as follows:

> The deputy that was sent over to give Mr. Divanovic his final warning concerning either coming over for the trial or having the trial go on without him reported in to the Court that he explained this to Mr. Divanovic, who clearly heard him; and all Mr. Divanovic did was wave his hand telling him to get away, and he did not say anything but waved his hand in a fashion that he didn't want Deputy Chartier talking to him; so we will proceed without him.

In due course, a jury was selected. Judge Fisher explained to the jury that Divanovic had chosen not to personally attend the trial and had instructed Bram-

Kamin's responses to the trial court's inquiry or the basis for his knowledge.

scher not to actively participate in the trial. The matter proceeded to trial and the jury convicted Divanovic.

At the sentencing, Bramscher reported that Divanovic again refused to attend and that Divanovic had again instructed him not to participate in the proceeding. Invoking the repeater provisions, Judge Fisher sentenced Divanovic to eleven years' imprisonment on the solicitation to commit a felony conviction and three years' consecutive imprisonment on the party to the crime of criminal damage to property conviction. The sentences were ordered consecutive to the sentence Divanovic was then serving. Divanovic appeals.

DISCUSSION

## 1. *Constitutional Right to be Present*

Divanovic first argues that he was "denied his due process right to a fair trial" because he was not present at the critical stages of the proceedings. We stress at the outset that Divanovic casts his argument solely in constitutional terms. He does not make any argument under, nor even cite, § 971.04, STATS., which governs a defendant's right or duty to be present at the various stages of a criminal proceeding.[4]

The Confrontation Clause and the Fourteenth Amendment grant an accused the right to be present in the courtroom at every stage of his or her trial. *State v. Haynes,* 118 Wis. 2d 21, 25, 345 N.W.2d 892, 894-95

---

[4] Generally, § 971.04, STATS., requires the presence of a defendant at all critical stages of the proceedings, but further provides that a trial may continue and a verdict may be received "[i]f the defendant is present at the beginning of the trial and thereafter . . . voluntarily absents himself or herself from the presence of the court without leave of the court . . .."

219

(Ct. App. 1984) (citing *Illinois v. Allen,* 397 U.S. 337, 338 (1970)). Although an accused has the constitutional right to be present at trial, he or she may lose this right by misconduct or consent. *Snyder v. Massachusetts,* 291 U.S. 97, 106 (1934). A waiver occurs when there is "an intentional relinquishment or abandonment of a known right or privilege." *Haynes,* 118 Wis. 2d at 25, 345 N.W.2d at 895 (quoted source omitted).

Whether Divanovic was denied his constitutional right to be present raises an issue of constitutional fact for our independent review. *See State v. Haste,* 175 Wis. 2d 1, 23, 500 N.W.2d 678, 687 (Ct. App. 1993). Because the right to be present throughout the trial is constitutionally guaranteed and essential to due process, waiver and presence throughout all critical stages of a criminal proceeding must be scrutinized with "painstaking care." *See id.*

Divanovic does not dispute that his own voluntary actions prompted his absences. Therefore, his argument focuses on his claim that "[he] was [not] apprised of his constitutional right to be present, to waive that right, and to reclaim it at any time." Although the law requires waiver of the right to be present, *Haynes,* 118 Wis. 2d at 25, 345 N.W.2d at 894-95, when a defendant is voluntarily absent from the trial proceedings, a defendant's failure to assert the right to be present can constitute an adequate waiver and an express waiver on the record is not essential. *See, e.g., United States v. Gagnon,* 470 U.S. 522, 528-29 (1985) (the failure of the defendant to invoke the right to be present under the Federal Rules of Criminal Procedure at a conference which he knew was taking place between the judge and a juror constituted a valid waiver); *see also Beverly v.*

*State*, 47 Wis. 2d 725, 729, 177 N.W.2d 870, 872 (1970) (despite the absence of the defendant from the proceeding at issue, waiver existed based on prior repeated requests, known and acquiesced in by the defendant, regarding the subject matter of the proceeding), *cert. denied*, 400 U.S. 995 (1971). Moreover, when evaluating whether a defendant's exclusion from a trial proceeding has eroded his or her constitutional rights, we must view the absence *in light of the entire record*. *Small v. Endicott*, 998 F.2d 411, 415 (7th Cir. 1993).

Divanovic relies heavily on *Haynes*. There, Haynes refused to come into the courtroom for jury selection after the trial court had denied his request for a new attorney. After a consultation between Haynes and his lawyer, the lawyer reported that Haynes refused to further participate in the trial. The trial court proceeded with the trial and Haynes was convicted. *Haynes*, 118 Wis. 2d at 24, 345 N.W.2d at 894. The court of appeals reversed the conviction, concluding that "the record is barren of any indication that [Haynes] was ever apprised of [the right to be present, to waive that right, and to reclaim it at any time]." *Id.* at 25, 345 N.W.2d at 895.

Here, however, the record is replete with evidence demonstrating that Divanovic knew of his right to be present and to claim that right. We will not repeat the procedural history of this case set out above. Suffice it to say that this record reveals repeated contacts by Bramscher, various court representatives and Judge Fisher himself urging Divanovic to attend the proceedings and warning him that the trial would proceed in his absence if he refused to attend.

*Haynes* acknowledges that a formal on-the-record proceeding "would be the optimum practice" for obtaining a waiver of a defendant's right to be present.

221

*Id.* at 27, 345 N.W.2d at 895. Thus, ideally, Judge Fisher's personal visit with Divanovic should have been reported. However, *Haynes* declined "to adopt the standards for notice of the right to be present" under certain federal case law. *Id.* at 26, 345 N.W.2d at 895. Noting that "instances of waivers of the right to be present at trial are bound to be extraordinary and difficult to handle," *Haynes* instead concluded that the matter of waiver "should be handled on a case-by-case basis." *Id.* at 27, 345 N.W.2d at 895. Here, given the repeated warnings to Divanovic of his right to be present and the consequences to him if he persisted in his refusal to attend, we agree with Judge Fisher that Divanovic waived his right to be present.

If there be any question about the sufficiency of the record we have recited, Bramscher's testimony at the postconviction hearing seals the issue. At that hearing, Bramscher again documented the various instances when Divanovic instructed him not to participate in the proceedings. More importantly, Bramscher expressly testified that he advised Divanovic of his right to attend the trial and his other attendant rights and that the trial would proceed without him. Divanovic, who appeared for the first time in the case at this postconviction hearing, did not testify at this hearing and did not otherwise offer any evidence to counter Bramscher's testimony.

Thus, this case is factually unlike *Haynes*, in which the defendant's refusal to return to the courtroom was sudden and unexpected and, as a result, the steps taken to inform the defendant of the right to be present and the consequences thereof received short shrift. Instead, in this case, Divanovic's pattern was constant and unrelenting. As a result, it afforded both

his counsel and Judge Fisher various opportunities to address this course of action with Divanovic.

In the face of this record, we echo the statement of the United States Supreme Court in a case which presents different facts but compels similar logic: "It is wholly incredible to suggest that petitioner, who was at liberty on bail, had attended the opening session of his trial, and had a duty to be present at the trial, entertained any doubts about his right to be present at every stage of his trial." *Taylor v. United States*, 414 U.S. 17, 20 (1973) (citation omitted).

### 2. *Right to Counsel*

Next, Divanovic contends that he was denied his right to effective trial counsel. The right to representation is constitutionally guaranteed and is essential to due process. *Haste*, 175 Wis. 2d at 23, 500 N.W.2d at 687.

We are not entirely clear as to the track of Divanovic's appellate argument on this issue. However, he appears to contend that because Bramscher was appointed by the trial court, Bramscher was obligated to provide full advocacy representation to Divanovic rather than to follow Divanovic's instructions, which functionally reduced Bramscher to the proverbial "potted plant."[5]

---

[5] On a threshold basis, the State contends that Divanovic has waived this issue by instructing Bramscher not to actively participate in the trial. However, if Divanovic is correct that he first had to waive his right to full representation because Bramscher was appointed by the trial court, waiver would obviously not lie. We choose therefore to address the issue on the merits.

Regardless of our uncertainty, we agree with Divanovic's fundamental argument that Bramscher's appointment, and later reappointment, obligated him, on a threshold basis, to provide full advocacy representation.[6] However, we reject Divanovic's further contention that because Bramscher was appointed by the court, he somehow was free to ignore the directives of Divanovic, the client.

Supreme Court Rule 20:1.2 (West 1996),[7] entitled "Scope of Representation," recites, in part, that "A lawyer shall abide by a client's decisions concerning the objectives of representation . . . ."[8] However, the comment that follows provides that such limits on the objectives of representation must follow consultation between the lawyer and the client. SCR 20:1.2 cmt. This consultation requirement was followed in this case as our discussion on the previous issue demonstrates. Thus, Bramscher was ethically bound to abide by Divanovic's instructions.

The case law is in accord. The attorney-client relationship is one of agent to principal, and as an agent, the attorney must act in conformity with his or her authority and instructions and is responsible to the principal if he or she violates this duty. *Olfe v. Gordon,*

---

[6] Thus, we need not discuss Divanovic's contention that the trial court appointed and reappointed Bramscher to provide full advocacy representation to Divanovic, not merely stand-by or back-up representation.

[7] We cite to the current version of the rule because it has not changed since the time this action began.

[8] The lawyer may not, however, counsel the client to engage in criminal or fraudulent conduct; nor may the lawyer's representation constitute a violation of the Rules of Professional Conduct or other law. *See* SCR 20:1.2 (d), (e) (West 1996).

93 Wis. 2d 173, 182, 286 N.W.2d 573, 577 (1980). A defendant who insists on making a decision which is his or hers alone to make in a manner contrary to the advice given by the attorney cannot subsequently complain that the attorney was ineffective for complying with the ethical obligation to follow his or her undelegated decision. *See Stano v. Dugger*, 921 F.2d 1125, 1151 (11th Cir.), *cert. denied sub nom. Stano v. Singletary*, 502 U.S. 835 (1991).

Thus, Bramscher was duty bound to abide by Divanovic's instructions, and Divanovic cannot now be heard to complain that Bramscher followed such directives. Indeed, had Bramscher not followed Divanovic's instructions, such might well have constituted ineffective assistance of counsel. We decline to put criminal defense attorneys in such a quandary.

### 3. *Penalty Enhancement*

Last, Divanovic challenges the repeater portion of his sentence for conspiracy to commit a felony. He contends that because the penalty for the crime of escape under § 946.42, STATS., cannot be enhanced by the provisions of § 939.62(1), STATS.,[9] soliciting a felony pursuant to § 939.30, STATS., cannot be charged as a repeater when it is based on the crime of escape.

The State first argues that Divanovic has waived this issue. We agree. As we have discussed, Divanovic

---

[9] Section 939.62(1), STATS., provides in part:

**Increased penalty for habitual criminality.** (1) If the actor is a repeater, as that term is defined in sub. (2), and the present conviction is for any crime for which imprisonment may be imposed (*except for an escape under s. 946.42* or a failure to report under s. 946.425) the maximum term of imprisonment prescribed by law for that crime may be increased . . .. [Emphasis added.]

refused to participate in the trial proceedings and instructed Bramscher not to participate in the proceedings. Consequently, this argument was never raised before the trial court. We properly decline to review an issue where an appellant has failed to give the trial court fair notice that he or she objects to a particular issue. *See State v. Gilles,* 173 Wis. 2d 101, 115, 496 N.W.2d 133, 139 (Ct. App. 1992). Courts generally will not consider an issue raised for the first time on appeal because had the issue been raised below, the opposite party might have addressed the situation by way of amendment or additional proof. *State v. Whitrock,* 161 Wis. 2d 960, 969, 468 N.W.2d 696, 700 (1991).

Divanovic's refusal to leave his jail cell and his concomitant instructions that his attorney not take an active role in his case deprived the trial court and the State of the opportunity to engage in the adversarial process and to address this potential problem. Divanovic has waived this issue.[10]

*By the Court.*—Judgment and order affirmed.

---

[10] On the merits, the State argues that § 939.62(1), STATS., clearly and unambiguously forbids the imposition of an increased penalty for habitual criminality in only two instances: a conviction for escape pursuant to § 946.42, STATS., and failure to report to a jail pursuant to § 946.425, STATS. Since Divanovic has not been convicted of either of these two crimes, but rather solicitation to commit a felony pursuant to § 939.30, STATS., the State contends that the imposition of the repeater sentence was proper.