STATE of Wisconsin, Plaintiff-Respondent,†

v.

Kelly K. KOOPMANS, Defendant-Appellant.

Court of Appeals

*Nos. 94–2424–CR, 94–3146–CR, 95–1402–CR. Oral argument*
*February 21, 1996.—Decided May 1, 1996.*

(Also reported in 550 N.W.2d 715.)

† Petition to review granted.

On behalf of the defendant-appellant, there were briefs and oral argument by *Mary E. Waitrovich*, assistant state public defender.

On behalf of the plaintiff-respondent, there was a brief by *James E. Doyle*, attorney general, and *Thomas J. Balistreri*, assistant attorney general, with oral argument by *Thomas J. Balistreri*.

Before Brown, Nettesheim and Snyder, JJ.

NETTESHEIM, J. Kelly K. Koopmans appeals from a trial court judgment of conviction for one count of intentional child abuse and one count of reckless child abuse, and from orders denying postconviction relief.

On appeal, Koopmans raises two issues. First, she argues that the trial court erred by denying her mistrial request after the court allowed testimony about her inculpatory statement which Koopmans contends was not revealed during discovery. We conclude that Koopmans' inculpatory statement was disclosed to her during discovery.

Second, Koopmans contends that the trial court erred when it sentenced her in absentia. We agree that Wisconsin law does not permit a trial court to sentence a defendant in absentia.

Therefore, we affirm that portion of the judgment which adjudges Koopmans guilty of the stated offenses. We reverse the sentencing portions of the judgment and the postconviction orders denying Koopmans a new sentencing proceeding.

### BACKGROUND AND TRIAL PROCEEDINGS

We recite the facts as revealed at trial. On the morning of July 23, 1992, Brent Morse, Koopmans' boyfriend, took Koopmans' then thirteen-month-old daughter, Krystie, to the child's grandmother's house. Morse indicated that Krystie did not appear to be

injured and was acting normally at that time. However, at about 10:30 a.m., Krystie's grandmother called Koopmans and asked her to pick up Krystie because she was crying.

Both Morse and Koopmans retrieved Krystie and took her home, where Koopmans fed and calmed her. They left when the afternoon babysitter arrived at the apartment and assumed responsibility for Krystie. At approximately 1:30 p.m., Koopmans called the babysitter and was informed that everything was fine.

Sometime after 4:00 p.m, the babysitter called Koopmans to tell her that Krystie was having trouble moving her arm. Koopmans and Morse immediately went home and found that Krystie's arm was "kind of limp," although she was not crying. The babysitter attributed the condition to the fact that Krystie had slept on her arm that afternoon, and when it seemed to improve, Koopmans and Morse returned to their jobs.

Later that evening, Koopmans discovered that Krystie could not hold weight on her left leg and called Mercy Hospital to ask the advice of a nurse. She also spoke with a physician who said it did not seem to be an emergency and told her to take Krystie to a doctor the next day. Koopmans made an appointment at Riverview Clinic for the following morning.

At the clinic, a pediatric radiologist discovered two fractures in Krystie's left leg and one in her left arm and estimated that both injuries had occurred sometime within the preceding five days. The radiologist also dated an ulna periosteal injury at approximately seven days, and an injury to the radius periosteal at four to six weeks. He testified at trial that it was "very unlikely" that the fractures had been caused accidentally. As a result of the examination, Krystie was taken from Koopmans and put into protective custody.

Within a week of the discovery of Krystie's injuries, Delavan Police Officer Greg Strohm interviewed Koopmans at Mercy Hospital in Janesville. A social worker, Judith Sicard Rhinehart, was also present during the interview. Based on this interview, Koopmans was targeted as a suspect, and on January 26, 1993, the State charged Koopmans with two counts of intentional child abuse, contrary to § 948.03(2)(a) and (5), STATS. Three days before trial, on November 12, 1993, the State amended the second count in the information to reckless child abuse, in violation of § 948.03(3)(a) and (5).

At trial, the prosecutor questioned Strohm about his interview of Koopmans at Mercy Hospital. Strohm testified, in part, as follows:

> At certain points during the conversation [Koopmans] would start to cry and laugh at the same time and seemed to be looking through the questions. The impression I was getting, I wish this would just go away. At one point in time, not too long into the interview, she stated to me — ["]I will just say I did this and we can just get this all behind us,["] or something to that effect.

At this point, Koopmans' trial attorney objected, stating that Strohm's answer sounded like speculation, and that he did not know if Strohm was talking about statements that Koopmans had given while she was in custody, and if so, whether the statements had been free and voluntary. The trial court overruled the objection and instructed the prosecutor to continue his direct examination.

The prosecutor asked several more questions of Strohm before Koopmans' attorney objected again and moved for a mistrial on the grounds that he "never

found such a statement in . . . discovery." The trial court concluded that Koopmans was not in custody at the time she made the alleged statement and that there was no inference that the statement was not voluntary. The court denied the mistrial motion, but did not specifically address Koopmans' objection that the statement was not disclosed during pretrial discovery.

On cross-examination, Strohm again referenced the statement allegedly made by Koopmans. During this testimony, Strohm stated that he did not take notes during Koopmans' interview because he knew that Rhinehart was taking notes. Rhinehart testified immediately after Strohm. She was asked on direct examination whether Koopmans had made any statement about the cause of Krystie's injuries. The exchange was as follows:

> Q . . . [D]id [Koopmans] make any statement about . . . having caused the injuries as opposed to Brent . . .?
>
> A She stated that she would say that she hurt the child herself, which she didn't, before she would think Brent did it.

At the conclusion of the testimony by Strohm and Rhinehart, Koopmans renewed her earlier motion for a mistrial. The trial court again denied the motion, concluding that the statement as recorded by Rhinehart had been disclosed to Koopmans.

On November 20, 1993, at the conclusion of a six-day jury trial, Koopmans was convicted of one count of intentional child abuse under § 948.03(2)(a) and (5), STATS., and one count of reckless child abuse under § 948.03(3)(a) and (5).

Following the conviction, the originally scheduled sentencing was cancelled because Koopmans had fled

the country with Krystie. On March 11, 1994, the trial court sentenced her in absentia to fifteen years in prison on the first count and a stayed ten-year sentence with ten years' probation on the second count. Shortly after the sentencing in absentia, Koopmans was apprehended in Belize and returned to Wisconsin.

Koopmans brought a postconviction motion seeking a new sentencing. She and her trial counsel submitted affidavits stating that before Koopmans was sentenced in absentia, she had not been advised of her right to be present and to make an allocution statement at the sentencing. The court denied the postconviction motion, concluding that Koopmans had waived her right to be present. Koopmans appeals.[1]

## DISCUSSION

### Discovery Violation

■
Koopmans first argues that the trial court erred when it allowed Strohm's testimony of her inculpatory statement and denied her motion for a mistrial. She maintains that the admission of the statement violated the discovery provisions of § 971.23(1), STATS. The State responds that although Strohm and Rhinehart

---

[1] On September 16, 1994, Koopmans filed a notice of appeal from the order denying postconviction relief. She filed a second notice of appeal from the judgment of conviction on November 30, 1994. This court granted Koopmans' February 9, 1995, motion to consolidate the two appeals on February 14, 1995. On March 27, 1995, this court granted Koopmans' March 23, 1995, motion for leave to file an amended postconviction motion in the trial court. After the trial court denied the amended postconviction motion, Koopmans filed a third notice of appeal. All three appeals have been consolidated for purposes of our review.

testified in different terms about the statement, their evidence establishes that there was but one inculpatory statement and that they were testifying about the same statement. Since the statement referred to by Rhinehart was revealed to Koopmans via discovery, the State argues that the trial court did not err.[2]

Section 971.23(1), STATS., requires the district attorney, upon demand, to furnish a defendant with a written summary of all oral statements made by the defendant, and the witnesses thereto, which the prosecutor plans to use at trial. *See State v. Maass,* 178 Wis. 2d 63, 68, 502 N.W.2d 913, 915-16 (Ct. App. 1993).[3] The remedy for the failure to comply with a duty of disclosure is stated in subsec. (7)—"The court shall exclude any witness not listed or evidence not presented . . .

---

[2] On a threshold basis, the State argues that Koopmans did not make a timely or specific objection to the admission of the statement. Koopmans initially objected on grounds that Strohm's answer was speculation and raised possible *Miranda* problems. However, only a few questions later, Koopmans extended her objection to discovery grounds. We conclude that even though the objection on discovery grounds was not instantaneous, it was timely enough to preserve the issue. Our holding on this point is proper given that the discovery revelation pertained to the statement recorded by Rhinehart, not Strohm.

[3] Section 971.23(1), STATS., provides:

**Discovery and inspection. (1)** DEFENDANT'S STATEMENTS. Upon demand, the district attorney shall permit the defendant within a reasonable time before trial to inspect and copy or photograph any written or recorded statement concerning the alleged crime made by the defendant which is within the possession, custody or control of the state . . . . Upon demand, the district attorney shall furnish the defendant with a written summary of all oral statements of the defendant which the district attorney plans to use in the course of the trial. The names of witnesses to the written and oral statements which the state plans to use in the course of the trial shall also be furnished.

393

unless good cause is shown for failure to comply." *See State v. Ruiz,* 118 Wis. 2d 177, 197, 347 N.W.2d 352, 361-62 (1984).

■

We conclude that there was no violation of § 971.23(1), STATS., because the evidence shows that Koopmans made only one statement that was inconsistent with her otherwise unwavering denials of abusing Krystie and that this statement was divulged to Koopmans during the discovery process. On cross-examination, Strohm testified:

> Q And [Koopmans] indeed has always told you that she never hurt this child?
>
> A Yes, she's always said that, except for the initial interview.
>
> Q Except for the initial interview?
>
> A As I stated before, in the initial interview she said: ["]I will just say I did it so we can get on with this.["]

Strohm had testified on direct examination that Koopmans had stated, "[']I will just say I did this and we can just get this all behind us,['] *or something to that effect.*" (Emphasis added.) The jury also heard Strohm's testimony that although Rhinehart took notes during the initial interview, Strohm had not taken notes and was not quoting Koopmans verbatim, but was relying on his own recollection.

The jury heard Rhinehart's testimony immediately following Strohm's. She testified that she was present during the interview of Koopmans at Mercy Hospital. Rhinehart's testimony was similar to Strohm's regarding the inculpatory statement. Both witnesses testified to Koopmans' statement offering to

accept responsibility for the harm to the child. The only difference was that Rhinehart's version referenced the possible involvement of Morse. More importantly, both Strohm's and Rhinehart's testimony alluded to but one inculpatory statement by Koopmans in the face of her otherwise steadfast denials. From this, we conclude that their testimony alluded to the same statement—a statement which was produced during the discovery process.

Thus, while Strohm and Rhinehart did not give the exact same rendition of Koopmans' statement,[4] the record in this case supports the conclusion that Koopmans was made aware that the statement she made at the interview would be used at trial through either Rhinehart, Strohm or both. We base this on the following history. Koopmans had filed an extensive and all-encompassing motion for discovery prior to trial. Koopmans has not included the State's response to this motion in the appellate record. From this, we properly conclude that, except for her oral statement to Strohm, the State fully complied with her discovery demands. Thus, Koopmans knew that both Rhinehart and Strohm would testify. And, she additionally had been provided with Rhinehart's version of her statement made in the presence of Rhinehart and Strohm. In fact, the trial court made an express finding on this latter point—a finding which Koopmans does not dispute. In addition, Koopmans does not dispute that Rhinehart and Strohm were present when she made her statement. It follows that Koopmans reasonably knew that they would both be presenting ·their individual accounts of the initial interview. Therefore, Koopmans

---

[4] It would be rare for different witnesses to give exact versions of an oral statement.

was put on fair notice that the State intended to use the statement.

In light of this record, we conclude that the trial court properly allowed Strohm's testimony regarding the statement and properly denied Koopmans' motion for a mistrial.

Alternatively, we hold that if any error occurred, it was harmless. Our review of a claimed discovery violation under § 971.23, STATS., is subject to a harmless error analysis. *See Ruiz,* 118 Wis. 2d at 198, 347 N.W.2d at 362. A conviction should be overturned as a result of noncompliance with the statute only if it appears that the result probably would have been more favorable to the defendant had the evidence been excluded. *See id.* at 198-99, 347 N.W.2d at 362.

Even if the State was required to produce Koopmans' statement to Strohm on discovery, our foregoing analysis of the facts and the history of this case demonstrate that Koopmans not only reasonably knew that Strohm and Rhinehart would testify, but that they would testify regarding the single inculpatory statement which she had made. Thus, we cannot say that the specific failure to reveal to Koopmans that her statement would come into evidence via Strohm as well as Rhinehart worked any prejudicial effect.

## Sentencing in Absentia

Koopmans next argues that the trial court erred when it sentenced her in absentia. She contends that this procedure violated both her constitutional and statutory rights. We agree that the sentencing in this case violated the statutes.

■ The interpretation of a statute is a question of law which we review independently. *See State v. Sostre,* 198 Wis. 2d 409, 414, 542 N.W.2d 774, 776 (1996). The goal of statutory construction is to give effect to the intent of the legislature. *Id.* The first step in this process is to look to the language of the statute. *Id.* If the meaning of the statute is clear, we will not look outside the statute to ascertain its meaning. *Kellner v. Christian,* 197 Wis. 2d 183, 190, 539 N.W.2d 685, 688 (1995). We will simply apply the plain meaning of the statute to the facts at hand. *See id.*

■ A defendant has a due process right to be present at a sentencing hearing and to be afforded the right of allocution. *State v. Varnell,* 153 Wis. 2d 334, 340, 450 N.W.2d 524, 527 (Ct. App. 1989). Section 971.04(1), STATS., provides in relevant part:

> **Defendant to be present. (1)** Except as provided in subs. (2) and (3), the defendant shall be present:
>
> . . .
>
> (g) At the pronouncement of judgment and the imposition of sentence . . . .

Subsection (2), which permits a defendant charged with a misdemeanor to be excused from attending any or all proceedings and to authorize an attorney to act on his or her behalf, has no application in this case because Koopmans was charged with a felony.

Likewise, subsec. (3) of § 971.04, STATS., does not provide an exception to the statute's requirement that a defendant shall be present at sentencing. It reads, "If the defendant is present at the beginning of the trial and thereafter . . . voluntarily absents himself or her-

self from the presence of the court without leave of the court, *the trial or return of verdict* of the jury in the case shall not thereby be postponed or delayed . . . ." *Id.* (emphasis added). This subsection does not say that "sentencing" shall not be postponed, nor does the remaining language of § 971.04 provide for sentencing in a defendant's absence.

Thus, Wisconsin law does not merely require that a defendant be personally present at sentencing. Were that the case, we perhaps could be persuaded that such right can be waived. But our legislature has gone further. By the language of § 971.04(3), STATS., the legislature has further expressly detailed which proceedings may go forth in the face of the defendant's voluntary absence. These include the completion of the trial and receipt of the jury's verdict. But at that point, the statute stops and no further proceedings are authorized. It would have been a simple matter for the legislature to authorize further proceedings had it so desired. It did not.

Although the State can cite to other jurisdictions which approve sentencing in absentia,[5] we conclude that the plain language of the Wisconsin statutes requires a defendant's presence at sentencing.

We also observe that the State's argument that Koopmans waived her right to be present by virtue of her fugitive status relies on cases which discuss the

[5] *See, e.g., Capuzzo v. State,* 578 So. 2d 328, 329 (Fla. Dist. Ct. App. 1991), *aff'd,* 596 So. 2d 438 (Fla. 1992); *People v. Lane,* 414 N.E.2d 1249, 1251 (Ill. App. Ct. 1980); *Gillespie v. State,* 634 N.E.2d 862 (Ind. Ct. App. 1994); *Crank v. State,* 502 N.E.2d 1355, 1358-59 (Ind. Ct. App. 1987); *People v. Corley,* 491 N.E.2d 1090, 1091-92 (N.Y. 1986); *Commonwealth v. Rodriguez,* 670 A.2d 678 (Pa. Super. Ct. 1996).

predecessor statute of § 971.04, STATS., and which the State concedes "admittedly dealt only with a defendant's presence at the trial." Further, the State's reliance on *French v. State,* 85 Wis. 400, 410, 55 N.W. 566, 569 (1893), for the proposition that a waiver occurs when there is a positive and personal relinquishment of a right offers no guidance in the face of a later-enacted statute which specifically requires a defendant's presence at sentencing.

We also reject the State's argument that we should construe the word "shall" in § 971.04(1), STATS., as directory rather than mandatory. The word "shall" is presumed to be mandatory when it appears in a statute. *Georgina G. v. Terry M.,* 184 Wis. 2d 492, 511, 516 N.W.2d 678, 683 (1994). The State has not demonstrated to our satisfaction anything to overcome that presumption. *See id.* at 512, 516 N.W.2d at 683. We conclude that the plain language of the statute requires a defendant's presence at sentencing.

Finally, we address this court's recent opinion in *State v. Divanovic,* 200 Wis. 2d 210, 546 N.W.2d 501 (Ct. App. 1996).[6] There, Divanovic was in custody during all the trial court proceedings. However, he refused to come out of the jail to attend any of the proceedings, from the initial appearance through the sentencing. On appeal, Divanovic argued that he had not sufficiently waived his constitutional right to be present. *Id.* at 220, 546 N.W.2d at 505. In deciding the case, we stressed that we were addressing only the constitutional, not the statutory, implications of the issue. *Id.* at 219, 546 N.W.2d at 504.

We rejected Divanovic's argument, holding that the record sufficiently showed that Divanovic knew of

[6] The parties' briefs in this case were filed before *Divanovic* was released. Therefore, they did not address *Divanovic.*

his constitutional right to be present and his waiver of that right by his words and conduct. *Id.* at 221, 546 N.W.2d at 505. Here, of course, the statutory issue not raised in *Divanovic* is squarely before us. Thus, even assuming that Koopmans waived her constitutional right to be present at the sentencing under *Divanovic*, that ruling does not govern the statutory question before us. Our conclusion that a defendant cannot be sentenced in absentia is not precluded by *Divanovic* or constitutional considerations. The laws of a state may accord greater protections than the minimums which are imposed by the United States Supreme Court. *See State v. Doe*, 78 Wis. 2d 161, 172, 254 N.W.2d 210, 216 (1977); *see also Oregon v. Hass*, 420 U.S. 714, 719 (1975).

## CONCLUSION

We affirm that portion of the judgment which adjudges Koopmans guilty. We reverse the sentencing provisions of the judgment and the postconviction orders denying Koopmans a new sentencing proceeding. We remand for further sentencing in Koopmans' presence.

*By the Court.*—Judgment affirmed in part, reversed in part; orders reversed and cause remanded.